FELICE JOHN VITI, Acting United States Attorney (7007)
AMANDA A. BERNDT, Assistant United States Attorney (15370)
Attorneys for the United States of America
111 South Main Street, Suite 1800
Salt Lake City, Utah 84111
(801) 524-5682
amanda.berndt@usdoj.gov

UNITED STATES DISTRICT COURT

DISTRICT OF UTAH

| | |
|---|---|
| TJ ZUECH,<br><br>Plaintiff,<br><br>v.<br><br>TROY E. MEINK, Secretary, Department of the Air Force,<br><br>Defendant. | **MOTION FOR SUMMARY JUDGMENT ON DISABILITY DISCRIMINATION CLAIMS**<br><br>Case No. 1:24-cv-00038-AMA-DAO<br><br>Judge Ann Marie McIff Allen<br>Magistrate Judge Daphne A. Oberg |

## INTRODUCTION

Plaintiff TJ Zuech was previously employed by Hill Air Force Base in Clearfield, Utah.[1] He asserts two causes of action based on the Rehabilitation Act.[2] First, he alleges that the Air Force failed to accommodate his disability beginning in late 2022.[3] Second, he alleges that the Air Force discriminated against him when it took various disciplinary actions against him, including indefinitely suspending him in May 2023 and thereafter terminating his employment.[4]

[1] Am. Compl. ¶ 31 (ECF No. 26).

[2] *Id.* ¶¶ 182–213.

[3] *Id.* ¶¶ 182–196.

[4] *Id.* ¶¶ 197–213.

Zuech appealed his suspension and termination to the Merit Systems Protection Board (MSPB), and therein alleged that both adverse actions were the result of disability discrimination.[5] After a hearing, the MSPB affirmed the Air Force's decisions to suspend and remove Zuech and found that Zuech did not establish that either action was the result of disability discrimination.[6]

Zuech also filed a complaint of discrimination with the Air Force alleging that he had been denied reasonable accommodations in January 2023 and that his supervisor had subjected him to increased discipline thereafter, which ultimately led to his termination.[7] The agency dismissed that EEO complaint because Zuech did not timely initiate contact with an EEO counselor and because Zuech had previously elected to pursue his claims before the MSPB.[8] The EEOC affirmed the dismissal.[9]

Defendant Troy E. Meink, in his capacity as Secretary of the Air Force, now moves for summary judgment on Zuech's disability-discrimination claims. First, Zuech's failure-to-accommodate claims fail because he did not timely contact an EEO counselor. Second, Zuech's claim that his suspension and removal were the result of disability discrimination fails because Zuech cannot establish a prima facie of disability discrimination because he was not otherwise qualified for his position at the time of his suspension and because the evidence does not support

---

5 *Id.* ¶ 25.

6 *Id.* ¶¶ 26, 214–15.

7 *Id.* ¶¶ 8–14.

8 *Id.* ¶ 15.

9 *Id.* ¶ 18.

a finding that he was suspended and removed "solely by reason of"[10] his disability. Moreover, the Air Force had legitimate, nondiscriminatory reasons for suspending and removing Zuech and there is no evidence that those reasons were a pretext for discrimination.

## FACTUAL BACKGROUND

1. At times relevant to this action, Zuech was employed as a GS-1670-11 Equipment Specialist (Missiles and Electronics) for the Nuclear Weapons Center at Hill Air Force Base ("Hill AFB").[11] He had been in that position since approximately 2018.[12]

2. Zuech's position with the Nuclear Weapons Center required that he be allowed to access classified information.[13] And while some of his job duties could be handled remotely, other job duties were required to be performed at Hill AFB.[14] Zuech's position therefore also required that he have access to Hill AFB.[15]

3. At times relevant to this action, Zuech's first-line supervisor was Lori Masero, his second-line supervisor was Thomas Huber, and his third-line supervisor was Aimee Tarbet.[16]

---

[10] 29 U.S.C. § 794.

[11] *Id.* ¶ 33; Testimony of TJ Zuech (Bates-stamped USA01943–2003) at USA01947:20–24, attached hereto as Exhibit A; May 3, 2023 SF-50 (Bates-stamped USA00222), attached hereto as Exhibit B.

[12] Zuech Testimony at USA01948:12–14.

[13] Am. Compl. ¶ 33; Position Description (Bates-stamped USA00311–321) at USA00320, attached hereto as Exhibit C; Testimony of Aimee Tarbett (Bates-stamped USA01876–1911) at USA01878:22–1879:23, attached hereto as Exhibit D.

[14] Testimony of Lori Masero (Bates-stamped USA01810–76), at USA01817:17–1818:3, attached hereto as Exhibit E.

[15] *Id.*; *see also* Tarbett Testimony at USA01879:24–1880:4.

[16] Masero Testimony at USA01818:19–25.

**Requests for Leave and Formal Requests for Accommodations**

4. In 2022, Zuech submitted paperwork to take Paid Parental Leave (PPL) beginning in late June or early July.[17]

5. While on PPL, Zuech made requests to convert PPL leave to sick leave (for various illnesses and doctor's appointments) or annual leave.[18] Zuech's supervisors approved some of those requests and denied others.[19]

6. For example, on September 7, 2022, Zuech informed Masero that he and his son were sick, and he requested sick leave until he "could get over his illness."[20] His request was approved.[21]

7. On September 18, Zuech alleges he told Masero that the illness had "traveled through his family" and requested sick leave to take care of them, both retroactively for September 12–15, and prospectively for September 19–23.[22] Masero denied the request for sick leave from September 12–15 (instead requiring him to use previously approved PPL) because

---

[17] Am. Compl. ¶¶ 35–36; Masero Testimony at USA01825:13–1827:17.

[18] Am. Compl. ¶¶ 39–52; Masero Testimony at USA01834:15–22, USA01842:19–1843:3; Master Time History (Bates-stamped USA00368–83), attached hereto as Exhibit F.

[19] Am. Compl. ¶¶ 39, 44–48, 52; *See generally* Master Time History.

[20] Am. Compl. ¶ 44; Zuech Testimony at USA01958:24–1959:4.

[21] *Id.*; Master Time History at USA00370.

[22] Am. Compl. ¶ 45–46; Zuech Testimony at USA01958:24–1959:4; Master Time History at USA00370.

Zuech failed to seek approval in advance.[23] But Masero approved Zuech's request to use sick leave from September 19–23.[24]

8. Zuech challenged several of the leave denials through the union grievance process.[25] Zuech also alleges that he requested and received information from Masero in September 2022 regarding the process for filing a discrimination complaint.[26]

9. Between October and December 2022, Zuech continued to take various forms of paid leave.[27]

10. For example, Zuech took annual leave for a hunting trip October 3–17, 2022.[28]

11. On November 7, Zuech filed two union grievances related to denials of his leave requests for September 12–15 and November 2, 2022."[29]

12. Zuech continued to request leave in January 2023.[30] Between January 1 and January 18, he was allowed to take his remaining PPL and otherwise covered the balance of his absence with sick leave.[31] From January 19–31, Zuech requested leave to "work on his mental

---

[23] *Id.* ¶ 47; *see also* Master Time History at USA00371.

[24] *Id.*

[25] *E.g.,* Am. Compl. ¶¶ 48, 51, 53, 55; *see also* Zuech Testimony at USA01959:3–6, USA01969:4–16, USA01970:8–20.

[26] Am. Compl. ¶ 49.

[27] *Id.* ¶¶ 71–77, Master Time History at USA00372–76. During this timeframe, Zuech was paid for three hours of regular time, but that time was spent on union matters, not his regular job duties. *See* Zuech Testimony at USA02003:16–20.

[28] Masero Testimony at USA01843:24–1844:3; Zuech Testimony at USA01965:2–7; Master Time History at USA00371–72.

[29] Am. Compl. ¶ 69; Zuech Testimony at USA01970:8–20.

[30] Am. Compl. ¶¶ 97, 101–02; Master Time History at USA00376–77.

[31] Master Time History at USA00376–77.

health" and for doctor's appointments.[32] Those requests were denied, but he did not return to work.[33]

13. On January 9, Masero emailed Zuech a Reasonable Accommodation Request Form to "assist [him] in processing any such request." [34]

14. On January 12, Zuech's counsel, David Holdsworth, emailed a Reasonable Accommodation Request Form to Greg Boykin, Hill AFB's Disability Program Manager, on Zuech's behalf.[35]

15. On January 26, Greg Boykin requested additional medical documentation needed to process the accommodation request from Zuech and Mr. Holdsworth.[36]

16. On January 31, Zuech filed additional union grievances over the denial of sick leave.[37]

---

[32] Am. Compl. ¶¶ 103–112; Sample of January Emails (Bates-stamped USA02241–45, USA02259–66, USA02276–80, USA02301–02), attached hereto as Exhibit G.

[33] Master Time History at USA00377–78.

[34] Am. Compl. ¶ 100; Jan. 9, 2023 Email from L. Masero, with attachments (Bates-stamped USA02246–56), attached hereto as Exhibit H; *see also* Masero Testimony at USA01854:9 – 1857:13.

[35] Jan. 12, 2023 Email from D. Holdsworth, with attachments (Bates-stamped USA02269–75), attached hereto as Exhibit I.

[36] Jan. 26, 2023 Email from G. Boykin, with attachments (Bates-stamped USA02281–2300), attached hereto as Exhibit J.

[37] Am. Compl. ¶ 111.

17. On February 14, Masero reminded Zuech that he needed to provide the requested medical documentation in support of his request for a reasonable accommodation no later than February 21, 2023.[38]

18. On February 15, Zuech requested leave to "work on his mental health" and "because of a loss of a family member."[39] Masero approved the request and solicited additional information about the family relationship so that she could determine "the appropriate amount of leave" that she would be allowed to approve.[40]

19. The next day, Zuech again requested leave to work on his mental health and "because of a loss of family members."[41]

20. Masero again requested information about the nature of Zuech's relationship to the "family" members.[42] In response to that email, Zuech for the first time disclosed to Masero that the losses were of "k-9 companions."[43]

21. Masero subsequently provided regulations on bereavement leave (per Zuech's request) and denied Zuech's February 15–16 requests for leave.[44]

22. On February 20, Zuech requested an extension—through February 24—of his deadline to provide medical documentation substantiating his mental-health disability and need

---

[38] *See* Feb. 14–16, 2023 Emails between L. Masero and T. Zuech (Bates-stamped USA02306–17) at USA02306–07, attached hereto as Exhibit K.

[39] *Id.* at USA02308.

[40] *Id.* at USA02309.

[41] *Id.* at USA02310.

[42] *Id.* at USA02311.

[43] *Id.* at USA02312–13.

[44] *Id.* at USA02314–17.

for an accommodation.[45] The next day, he resubmitted his accommodation form and stated that he would provide the necessary medical documentation by the end of the week.[46]

23. On February 21, Masero denied the extension request and the pending reasonable-accommodation request but invited Zuech to submit a new request once he had the necessary documentation.[47]

24. On February 22, Zuech emailed a doctor's note to Masero, in which his doctor stated that Zuech "has been advised not to work over the past several months and this is still the recommendation . . . ."[48] Zuech then forwarded the medical note to another office pursuant to instructions from Masero.[49]

25. Zuech remained off work during this time.[50]

26. Beginning on March 9 and continuing until his indefinite suspension on May 3, Zuech's daily requests for paid leave were approved.[51]

---

45 Feb. 20, 2023 Email from T. Zuech (Bates-stamped USA02318), attached hereto as Exhibit L.

46 Zuech Testimony at USA01976:11–1977:10; *see also* Feb. 21–22, 2023 Emails between L. Masero and T. Zuech, with attachments (Bates-stamped USA02323–47) at USA02342–45, attached hereto as Exhibit M.

47 *See* Feb. 21–22 Emails at USA02323–41, attached hereto as Exhibit M; Masero Testimony at USA01858:8–1859:18, 1874:15–1875:21; Zuech Testimony at USA01976:11–1977:10.

48 Feb. 21–22 Emails at USA02346–47; Zuech Testimony at USA02001:1–2003:15.

49 Zuech Testimony at USA02003:1–13.

50 Master Time History at USA00378–79.

51 Am. Compl. ¶¶ 141–173.

27. In sum, while Zuech had been "on base" to file union grievances and for "meetings with management," he did not return to performing his regular job duties after June 29, 2022.[52]

**Disciplinary Actions**

28. Masero sent Zuech a proposed reprimand for lack of candor on December 21, 2022.[53] The proposed reprimand related to an allegation that Zuech failed to disclose in June 2022 that he was engaged in outside employment.[54]

29. Zuech alleges that he informed Masero that her letter contributed to his "feeling harassed and retaliated against."[55]

30. Thomas Huber, Zuech's second-line supervisor, formally reprimanded for this incident on January 18, 2023.[56]

31. Zuech alleges that he filed three grievances against Masero for "disparate treatment" and denials of sick leave on January 31, 2023.[57]

---

[52] Zuech Testimony at USA02003:16–20.

[53] Notice of Proposed Reprimand (Bates-stamped USA00421–23); attached hereto as Exhibit N.

[54] *Id.*

[55] Am. Compl. ¶ 90.

[56] Decision to Reprimand (Bates-stamped USA00418), attached hereto as Exhibit O.

[57] Am. Compl. ¶ 112.

32. On February 8, Masero issued a notice of a proposed seven-day suspension to Zuech.[58] On February 27, Masero issued an amended notice of proposed suspension, adding a charge for lack of candor based on Zuech's requests for leave on February 15–16.[59]

33. Huber issued a notice of a 10-day suspension on March 24, after considering Zuech's written response.[60]

34. Zuech alleges that he challenged his suspension through the union grievance process on April 11.[61]

35. In February 2023, Mr. Zuech visited Hill AFB's union office to file grievances against his supervisors.[62] While there, he reported to Laura Haislip that he'd had a "vivid dream" the night before in which he "ended up shooting [his] supervisor."[63] He recounted the same dream to another employee shortly thereafter.[64]

---

[58] Notice of Proposed Suspension (Bates-stamped USA00411–15), attached hereto as Exhibit P.

[59] Amended Notice of Proposed Suspension (Bates-stamped USA00407–08), attached hereto as Exhibit Q.

[60] Decision to Suspend (Bates-stamped USA00401), attached hereto as Exhibit R.

[61] Am. Compl. ¶ 158.

[62] Zuech Testimony at USA01943:24–1945:23, 1992:9–1993:19.

[63] Testimony of Laura Haislip (Bates-stamped USA1794–1809) at USA01798:19–1799:20, attached hereto as Exhibit S; Zuech Testimony at USA01945:13–18.

[64] Zuech Testimony at USA01946:17–23.

36. On March 3, 2023, Laura Haislip reported her February 2023 interaction with Zuech to her supervisor, who subsequently forwarded Haislip's statement to Masero and others.[65]

37. Based on this report, Colonel Kirsten A. Nemish suspended Zuech's access to classified information on March 15, 2023.[66] Zuech was given notice and an opportunity to respond to that decision.[67]

38. On March 16, 2023, Hill AFB's Installation Commander, Colonel Jeffrey Holland barred Zuech from accessing Hill AFB indefinitely "based on a life-threatening comment about your supervisor."[68]

39. Zuech's position as an Equipment Specialist required that he have a security clearance and that he have access to Hill AFB.[69]

40. On March 28, Thomas Huber proposed an indefinite suspension based on Zuech's loss of access to classified information.[70]

---

[65] Haislip Testimony at USA01802:11–1804:24; Email from L. Haislip (Bates-stamped USA00159–60), attached hereto as Exhibit T.

[66] Notification of Suspended Access to Classified Information (Bates-stamped USA00155), attached hereto as Exhibit U.

[67] *Id.*

[68] Am. Compl. ¶ 146; Administrative Barment Order (Bates-stamped USA00362–63), attached hereto as Exhibit V.

[69] Masero Testimony at USA01850:24–1852:16; Zuech Testimony at USA01973:23–25; Tarbett Testimony at 1879:6–1880:8.

[70] Notice of Proposed Indefinite Suspension (Bates-stamped USA00147–49), attached hereto as Exhibit W.

41. Zuech challenged the indefinite suspension, but the decision was upheld and the suspension became effective on May 3.[71]

42. Aimee Tarbet was the official responsible for deciding to indefinitely suspend Zuech.[72]

43. Zuech timely appealed the indefinite suspension to the MSPB.[73]

44. On April 18, Huber proposed Zuech's removal.[74] The proposed removal was based on three charges: (1) conduct unbecoming of a federal employee based on Zuech's telling other employees that he had a "vivid dream" about killing or shooting his supervisor; (2) Zuech's inability to perform his duties as a result of the order barring him from entering Hill AFB; and (3) a lack of candor based on Zuech's use of certain leave in the fall of 2022.[75]

45. Zuech, through counsel, again challenged the proposed removal.[76]

46. Aimee Tarbett, after considering Zuech's response and reviewing nearly 500 pages of evidence, decided to remove Zuech from federal employment effective May 31.[77]

---

[71] Zuech Responses to Proposed Indefinite Suspension (Bates-stamped USA00231–40), attached hereto as Exhibit X; Decision to Indefinitely Suspend (Bates-stamped USA00223–27), attached hereto as Exhibit Y.

[72] Tarbett Testimony at USA01878:14–21.

[73] May 31, 2023 MSPB Form 185 (Bates-stamped USA00001–8), attached hereto as Exhibit Z.

[74] Notice of Proposed Removal (Bates-stamped USA00355–59), attached hereto as Exhibit AA.

[75] *Id.*

[76] May 2, 2023 Ltr. from D. Holdsworth (Bates-stamped USA00349–54), attached hereto as Exhibit BB.

[77] Decision to Remove (Bates-stamped USA00333–46), attached hereto as Exhibit CC; Tarbett Testimony at USA01882:1–24.

47. In deciding to remove Zuech, Tarbett carefully considered and applied the required Penalty Selection Factors (also known as the "Douglas factors").[78]

48. Zuech timely appealed his termination to the MSPB.[79]

**EEO Contacts and Complaint**

49. On October 20, 2022, Zuech contacted Hill AFB's EEO office to inquire about filing an EEO complaint for discrimination related to his use of paternity time. After he was informed that his alleged basis of discrimination was not within the purview of the EEO laws, he elected not to pursue a complaint at that time.[80]

50. On November 7, 2022, Zuech and his representative contacted Hill AFB's EEO office. Although Zuech reported that he felt he was being harassed about taking leave, he did not file a formal complaint of discrimination.[81]

51. On November 21, 2022, Zuech visited Hill AFB's EEO Office and spoke with Equal Opportunity Specialist ("EO Specialist") Jesse Santos. Zuech reported that he felt his supervisor retaliated against him for filing union grievances and that he believed his supervisor was denying him medical leave. EO Specialist Santos offered Zuech an intake packet, but Zuech did not complete or return the intake packet.[82]

---

78 Decision to Remove at USA00346; *see also generally* Tarbett Testimony at USA1887:2–1904:21.

79 June 14, 2023 MSPB Form 185 (Bates-stamped USA00982–92). attached hereto as Exhibit DD.

80 Declaration of Jesse D. Santos ¶ 4, attached hereto as Exhibit EE; AFEONet Event Listing (Bates-stamped USA02054–55), attached to Santos Declaration as Exhibit 1.

81 Declaration of Justin L. Abbott ¶ 4, attached hereto as Exhibit FF.

82 Santos Decl. ¶¶ 6–8.

52. On July 15, 2023—exactly 45 days after Zuech's employment was terminated—Zuech, through his attorney, initiated contact with the EEO Office through email.[83]

53. On August 5, 2023, Zuech completed and returned a Pre-Complaint Intake Packet in which he stated that he had been "dissuaded" from filing an EEO complaint earlier.[84] He also asserted that the basis of the alleged discrimination was his "mental health disability."[85]

54. Zuech thereafter filed a formal complaint of discrimination with the Air Force.[86] In that complaint, he described his disability as "mental, anxiety, possibly PTSD."[87]

55. Zuech agreed with the Air Force's characterization of his claims as: discrimination on the basis of disability in January 2023 when he was denied a reasonable accommodation, subjected to increased discipline for seeking the accommodation, and eventually terminated.[88]

56. The Air Force dismissed Zuech's failure-to-accommodate claims as untimely and dismissed his termination claim based on his pending MSPB appeal.[89]

---

[83] Santos Decl. ¶ 9.

[84] Pre-Complaint Intake Packet (Bates-stamped USA02056–80) at USA02056–57, attached hereto as Exhibit GG.

[85] *Id.* at USA02058.

[86] Formal EEO Complaint Packet (Bates-stamped USA02082–89), attached hereto as Exhibit HH.

[87] *Id.* at USA02084.

[88] *Id.* at USA02089.

[89] Final Agency Decision (Bates-stamped USA02091–93), attached hereto as Exhibit II.

57. Zuech timely appealed the dismissal to the EEOC's Office of Federal Operations, which affirmed the agency's dismissal.[90]

58. Zuech timely filed this action on March 6, 2024.[91]

## STANDARD OF REVIEW

Summary judgment is appropriate when the movant "shows there is no genuine dispute as to the material facts and that the movant is entitled to judgment as a matter of law."[92] A factual dispute is genuine when "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way."[93] In determining whether there is a genuine dispute as to a material fact, the court should "view the factual record and draw all reasonable inferences therefrom most favorably to the nonmovant."[94] While the moving party "bears the initial burden of making a prima facie demonstration of the absence of a genuine issue of material fact and entitlement to judgment as a matter of law,"[95] the nonmoving party must "present affirmative evidence in order to defeat a properly supported motion for summary judgment" once the initial burden is met.[96] "To defeat a motion for summary judgment, evidence, including testimony,

---

90 EEOC-OFO Decision (Bates-stamped USA02236–42), attached hereto as Exhibit JJ.

91 *See* ECF No. 4.

92 FED. R. CIV. P. 56.

93 *Alder v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998).

94 *Id.*

95 *Id.* at 670–71.

96 *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986).

must be based on more than mere speculation, conjecture, or surmise."[97] "Unsubstantiated allegations carry no probative weight in summary judgment proceedings."[98]

## ARGUMENT

### I. Any claim based on disciplinary actions or denials of reasonable accommodation that occurred prior to May 31, 2023 is untimely.

The Rehabilitation Act prohibits discrimination and retaliation in federal employment based on disability.[99] Plaintiffs seeking to assert a discrimination claim under the Rehabilitation Act must comply with certain administrative complaint procedures before filing suit in district court.[100] The purpose of this administrative process is to give the agency the information it needs to investigate and attempt to resolve the employee's complaint.[101] The failure to comply with these administrative procedures is an affirmative defense in any subsequent litigation.[102]

One procedural requirement is that an employee must "initiate contact with an [EEO] counselor at his agency within 45 days of the date of the matter alleged to be discriminatory."[103]

---

97 *Bones v. Honeywell, Int'l Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).

98 *Id.*; *see also* *Anderson v. Coors Brewing Co.* 181 F.3d 1171, 1175 (10th Cir. 1999) ("A mere scintilla of evidence supporting the nonmoving party's theory does not create a genuine issue of material fact.").

99 29 U.S.C. § 794.

100 29 U.S.C. § 794a(a)(1) (incorporating the "remedies, procedures, and rights set forth in" 42 U.S.C. § 2000e-16 for employment claims under the Rehabilitation Act); *Hickey v. Brennan*, 969 F.3d 1113, 1118 (10th Cir. 2020) ("Federal employees alleging discrimination or retaliation prohibited by Title VII or the Rehabilitation Act must comply with specific administrative complaint procedures in order to exhaust their administrative remedies.") (quoting *Showalter v. Weinstein*, 233 F. App'x 803, 804 (10th Cir. 2007) (unpublished)).

101 *Martinez v. Potter*, 347 F.3d 1208, 1210 (10th Cir. 2008).

102 *Hickey*, 969 F.3d at 1118.

103 *Id.* (internal quotations omitted); *see also* *Nat'l R.R. Passengers Corp. v. Morgan*, 536 U.S. 101, 114 (2002) ("Each incident of discrimination and each retaliatory adverse employment

"Where discrete acts are at issue, 'the limitations period will begin to run for each individual act from the date on which the underlying act occurs' because '[e]ach discrete [act] is a separate actionable unlawful employment practice.'"[104] The denial of a requested accommodation "constitutes a discrete act of alleged discrimination."[105] If the matter is not resolved through pre-complaint counseling, an employee must then file a formal complaint of discrimination with the agency.[106] Upon receipt of a formal complaint, an agency must dismiss a complaint if the employee failed to comply with applicable time limits for contacting an EEO counselor, or if the complaint raises matters that were previously raised in an MSPB appeal.[107]

Zuech raised the agency's alleged Rehabilitation Act violations with an EEO counselor for the first time on July 15, 2023. At that time—and for the first time—he asserted that the Air Force failed to reasonably accommodate his mental disability and subjected him to increased discipline in January 2023. The Air Force correctly dismissed those claims as untimely.

Zuech suggests that he timely raised his claims when he contacted an EEO counselor in July 2015 because the harms of the Air Force's alleged failure to accommodate were ongoing.[108] This theory of a continuing violation cannot save Zuech's claims under the Rehabilitation Act.

---

decision constitutes a separate actionable unlawful employment practice."); 29 C.F.R. § 1614.105(a)(1).

[104] *Booher v. Rowland-Hall-St. Mark's Sch.*, No. 2:23-cv-00703-DAO, 2024 WL 4279038, at *4 (D. Utah Sept. 24, 2024) (unpublished) (quoting *Davidson v. America Online, Inc.*, 337 F.3d 1179, 1185 (10th Cir. 2003)).

[105] *Proctor v. United Parcel Serv.*, 502 F.3d 1200, 1210 (10th Cir. 2007).

[106] 29 C.F.R. § 1614.106(a).

[107] 29 C.F.R. § 1614.107(a)(2), (4).

[108] *See, e.g.*, Am. Compl. ¶¶ 8–23.

"Under the continuing violation theory, 'a plaintiff may recover for discriminatory acts that occurred prior to the statutory limitations period if they are part of a continuing policy or practice that includes the act or acts within the statutory period.'"[109] But the Supreme Court, the Tenth Circuit, and this Court have held that while the continuing-violation theory may apply to hostile-work-environment claims,[110] it does not apply to "discrete acts of discrimination, such as termination, failure to promote, denial of transfer, or a refusal to hire."[111]

Here, Zuech has not asserted—or properly exhausted—a hostile-work-environment claim. In his Amended Complaint, Zuech alleges that "his intent" in contacting the EEO office in July 2023 was to report that "he had been exposed to a hostile work environment" beginning in November 2022 and "continuing thereafter."[112] But the EEO filings reflect no such intent. During the administrative phase, Zuech described his claims as follows: "My management's denial of several of my requests for leave, esp. PPL leave after my second son was born, caused my mental health to be damaged. I sought reasonable accommodations for my mental health impairments. At first these were informal, but then my requests became more formal. As I

---

[109] *Booher*, 2024 WL 4279038, at *4 (quoting *Davidson*, 337 F.3d at 1183).

[110] *See, e.g.*, *Ford v. Brennan*, No. 21-4086, 2023 WL 5606233, at *5 & *7 n.15 (10th Cir. Aug. 30, 2023) (unpublished) (refusing to consider retaliatory conduct and alleged failures to accommodate that occurred outside the 45-day window when determining whether claims had been exhausted because "such interpretations are typically reserved for systemic claims like hostile work environment.").

[111] *E.g.*, *Davidson*, 337 F.3d at 1184 (quoting *Morgan*, 536 U.S. at 114); *see also, e.g.*, *Booher*, 2024 WL 4279038, at *4 (rejecting argument that a failure to accommodate constitutes a continuing violation); *Norman v. Syracuse High Sch.*, No. 1:12-cv-00021-EJF, 2013 WL 1335891, at *3–4 (D. Utah Mar. 29, 2013) (unpublished) (finding that an employer's refusal to accommodate a disability "is analogous to an employer's failure to promote or denial of a transfer").

[112] Am. Compl. ¶ 8.

forward[ed] letters from my health care providers, management escalated the discipline against me. I was never accommodated, I just got fired."[113] Such a statement of the issues presented—particularly where Zuech was represented by counsel during the administrative process—falls far short of asserting a claim of hostile work environment based on his disability.[114]

More importantly, Zuech did not assert a hostile-work-environment claim in his Amended Complaint.[115] He asserts only that he was denied a reasonable accommodation and subjected to certain disciplinary actions between January and March 2023.[116] And courts have consistently held that reasonable-accommodation denials and disciplinary actions are discrete acts that must be separately exhausted.[117] Zuech—despite being represented by experienced counsel—did not contact an EEO counselor to challenge these actions until July 15, months too

[113] Formal EEO Compl. at USA02084 (Ex. HH); *see also id.* at USA02089 (confirming the Air Force's framing of the issues raised during the pre-complaint process with only minor modifications).

[114] *Ford*, 2023 WL 5606233, at *5 & n.8 (rejecting argument that vague references to hostile work environment during EEO process suffice to properly exhaust or plead a claim for hostile work environment in subsequent litigation); *see also Green v. Donahoe*, 760 F.3d 1135, 1142 (10th Cir. 2014), *vacated and remanded on other grounds sub nom. Green v. Brennan*, 136 S. Ct. 1769 (2020) (EEO pleadings filed with assistance of counsel are not entitled to the liberal construction typically afforded to complaints prepared by unrepresented employees).

[115] *Ford*, 2023 WL 5606233, at *5 & n.8 (citing *Evans v. McDonald's Corp.*, 936 F.2d 1087, 1091 (10th Cir. 1991)).

[116] *See* Am. Compl. ¶¶ 182–213.

[117] *E.g.*, *Booher*, 2024 WL 4279038, at *5 ("Under Tenth Circuit precedent, plaintiffs cannot challenge discrete acts (including denials of accommodation requests) occurring outside the limitations period, under a continuing violation theory.") (internal citations omitted); *Celani v. IHC Health Servs.*, No. 4:22-cv-00066, 2023 WL 6391156 at *4 (D. Utah Oct. 2, 2023) (unpublished) ("[A] denial of a request for accommodation is a discrete act that cannot be part of a theory of continuing violation."). *See also Proctor*, 502 F.3d at 1210.

late. Summary judgment is therefore appropriate on any claim related to disciplinary actions or failure to accommodate that occurred prior to May 31, 2023.

Zuech also alleges that he contacted the EEO office at Hill AFB to report his claims of disability discrimination on November 21, 2022, but that the EEO Office "declined or refused to process his complaint."[118] To the extent he asserts that the Air Force should be "estopped" from asserting untimeliness as a defense to his claims, his argument fails.

First, the evidence establishes that Zuech did not report that he requested and was denied a reasonable accommodation related to his mental-health disability—or engaged in other protected activity—in the 45 days prior to November 21, 2022.[119] Rather, he reported only that he felt he was being retaliated against for filing union grievances and that his supervisor's leave denials were causing him to feel that he had a mental disability.[120] Moreover, he was not "dissuaded" from continuing the process. To the contrary, EO Specialist Santos offered Zuech an intake packet, but Zuech stated that he did not want to file a complaint.[121]

---

[118] Am. Compl. ¶ 20.

[119] If Zuech had contacted an EEO counselor on January 12, 2023, after he had engaged counsel, he could have timely challenged conduct that occurred after November 28, 2022 (45 days prior to January 12). But starting on November 22, Zuech requested—and was approved to take—continuous sick leave through the end of 2022. *See* Master Time History at USA00374–76 (Ex. F). Thus, even if those leave requests were construed as requests for accommodation, Zuech's own complaint establishes that the Air Force accommodated his mental-health disability with a leave of absence. *See Ford*, 2023 WL 5606233, at *7 (nothing that the Postal Service reasonably accommodated plaintiff "by affording him leave-without-pay status" after he was medically restricted from working).

[120] Santos Decl. ¶¶ 6–8 (Ex. EE).

[121] *Id.*

Even if Zuech somehow was "dissuaded" from filing a complaint at that time, there is no reasonable explanation for his failure to timely contact an EEO counselor after his formal request for a reasonable accommodation was denied. By that time, Zuech was represented by experienced counsel and had the benefit of counsel's advice regarding his rights and obligations in the EEO process.[122] One of those obligations was to contact an EEO counselor within 45 days of any act of discrimination or retaliation against him. Yet despite numerous incidents of alleged adverse actions taken by his supervisors between December 2022 and March 2023, Zuech did not contact an EEO counselor again until July 15, 2023—45 days after he learned he had been removed from federal service. Zuech's failure to timely exhaust his administrative remedies thus warrants summary judgment on any claim premised on those actions.

Finally, even if estoppel applied to save a claim that accrued prior to November 21, 2022, there is no evidence that Zuech was discriminated against or denied a reasonable accommodation in the 45 days before November 21 (i.e., between October 7 and November 21) or that he otherwise engaged in protected activity. "A plaintiff must show that he *requested* an accommodation before he may sue his employer for failing to provide one."[123] Zuech did not notify the Air Force during that time that he had a disability, and there is no evidence that Zuech's supervisors were aware of any claimed disability in October–November 2022. Zuech did not seek out any accommodation in that timeframe, other than requesting various types of

---

[122] *See, e.g.*, Jan. 12 Email from D. Holdsworth (Ex. H); Jan. 26 Email from G. Boykin to D. Holdsworth (Ex. J).

[123] *Forrest v. Zeeco, Inc.*, No. 22-cv-427, 2025 WL 2715479, at *6 (N.D. Okla. Sept. 23, 2025) (unpublished) (citing *Punt v. Kelly Servs.*, 862 F.3d 1040, 1050 (10th Cir. 2017) (emphasis in original)).

paid leave (many of which were for family care or vacation). Nor is there evidence that Zuech was subjected to any disciplinary actions between October and November 2022. While his supervisors occasionally denied him the specific *type* of leave he requested, Zuech's timecards reflect that he was in fact on various forms of paid leave for the entire 45 days prior to November 21, 2022.[124] In other words, even if his leave requests were construed by this Court as requests for accommodation, there is no evidence that the accommodation was denied.[125]

## II. Zuech cannot establish a prima facie case of disability discrimination regarding his suspension or removal from federal service.

Zuech alleges that the Air Force suspended him and ultimately removed him from federal service because of his disability.[126] The Rehabilitation Act prohibits a federal employer from discriminating against "an 'otherwise qualified individual with a disability.'"[127] To prevail on a disability discrimination claim based on circumstantial evidence, an employee must prove that (1) he was disabled; (2) he was otherwise qualified for the position, with or without an accommodation; and (3) he was discriminated against solely because of his disability.[128] If an employee establishes this "prima facie case" of discrimination, "the burden shifts back to the

[124] Master Time History at USA00372–74. As Zuech acknowledges, he did not return to work to perform his job duties after June 29, 2022. Zuech Testimony at USA02003:16–20 (Ex. A).

[125] *Cf. Selenke v. Med. Imaging of Colo.*, 248 F.3d 1249, 1261 (10th Cir. 2001) (an employer is not required to provide an accommodation "in the specific manner the employee requested" and retains "broad discretion in determining which alternative accommodation should be provided.").

[126] Am. Compl. ¶ 197–213.

[127] *McGeshick v. Principi*, 357 F.3d 1146, 1149 (10th Cir. 2004) (quoting 29 U.S.C. § 794).

[128] *E.g.*, *Cummings v. Norton*, 393 F.3d 1186, 1189 (10th Cir. 2005).

[employer] to articulate a nondiscriminatory reason for its conduct."[129] Once the employer articulates a "legitimate nondiscriminatory reason" for the adverse action, the burden shifts back to the employee to "show that the defendant's stated reason is merely pretextual."[130]

Courts "typically evaluate claims identically under the [Americans with Disabilities Act (ADA)] and Rehabilitation Act."[131] However, unlike the ADA, which "merely requires that the plaintiff's disability be a but-for cause"[132] of the alleged discrimination, the Rehabilitation Act requires that a plaintiff establish that their disability is the "sole cause of the adverse action."[133]

Zuech cannot make a prima facie case of disability discrimination because at the time of his suspension and removal, he was not otherwise qualified for the position.[134] Zuech's position required that he be allowed to access classified information and that he have access to Hill AFB to perform his job duties.[135] It is undisputed that Zuech's security clearance had been suspended

---

[129] *Id.* (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–03 (1973)).

[130] *Cummings*, 393 F.3d at 1189. Where direct evidence of discrimination exists, the *McDonnell Douglas* burden-shifting framework does not apply. *See, e.g.*, *Khalik v. United Air Lines*, 671 F.3d 1188, 1192 (10th Cir. 2012). No such direct evidence of discrimination exists here.

[131] *Crane v. Utah Dep't of Corr.*, 15 F.4th 1296, 1312 (10th Cir. 2021); *see also Cline v. Clinical Perfusion Sys., Inc.*, 92 F.4th 926, 931 (10th Cir. 2024) (noting that Rehabilitation Act claims are "governed by the substantive standards for disability discrimination claims under the Americans with Disabilities Act [ADA] of 1990.")

[132] *Crane*, 15 F.4th at 1313.

[133] *Staton v. DeJoy*, No. 1:23-cv-03223, 2025 WL 42821, at *5 (D. Colo. Jan. 7, 2025) (unpublished) (internal quotations omitted).

[134] For purposes of summary judgment, the Air Force does not dispute that Zuech could establish that he was disabled.

[135] *See, e.g.*, Position Description (Ex. C); Masero Testimony at 1817:17–1818:3 (Ex. E); *see also Mason v. Avaya Commc'ns, Inc.*, 357 F.3d 1114, 1119–20 (recognizing that physical attendance is "itself an essential function of most jobs").

and that he had been barred from entering Hill AFB beginning March 16, 2023, based on a co-worker's report that Zuech had told her he had dreamed of shooting his supervisor.[136] As a result of his suspended security clearance and the order barring him from Hill AFB, Zuech was unable to perform essential functions of his position at the time of the challenged adverse action.[137]

Zuech's Rehabilitation Act claims also fail because he cannot establish that his disability was the "sole cause" of his suspension or removal.[138] The decision to indefinitely suspend him was based on his inability to perform the functions of his position following the suspension of his security clearance and administrative barment from Hill AFB. Nothing in the record suggests that Tarbett, as the deciding official, considered Zuech's disability at all in her decision-making process, let alone that it was the "sole cause" of her decision to suspend him.

Likewise, Zuech was not removed from federal service "solely by reason of" his disability.[139] The decision to remove Zuech was reasonably based on a finding that he had engaged in conduct unbecoming of a federal employee when he recounted to his coworkers that he had a "vivid dream" in which he shot his supervisor. Zuech's decision to share his violent dream with two different coworkers—while expressing his ongoing frustrations with Masero—warranted Zuech's removal not because of his disability, but because it indicated a mental state

---

[136] Not. of Suspended Access to Classified Info. (Ex. U); Admin. Barment Order (Ex. V).

[137] To the extent Zuech challenges the decision to suspend his security clearance, his claim fails because such decisions are beyond review of the judicial branch. *See Dep't of the Navy v. Egan*, 484 U.S. 518 (1988).

[138] *See Peterson v. Univ. of Utah*, No. 2:22-cv-539, 2024 WL 3850012, at *3 n.23 (D. Utah. Aug. 16, 2024) (unpublished) (recognizing that the Rehabilitation Act imposes a heightened standard of causation).

[139] 29 U.S.C. § 794(a).

that could result in Zuech committing an act of violence that could put the well-being and safety of other employees at risk.[140]

Even if this court were to find that Zuech had met his initial burden under the *McDonnell Douglas* framework, the Air Force has proffered legitimate, nondiscriminatory reasons for its decision to suspend and ultimately remove Zuech from federal service,[141] and Zuech cannot establish that the Air Force's proffered reasons were pretextual. "To show pretext, the plaintiff must establish that the employer's proffered reasons were so incoherent, weak, inconsistent, or contradictory that a rational factfinder could conclude the reasons were unworthy of belief."[142] "But '[m]ere conjecture that the employer's explanation is pretext[ual] cannot defeat summary judgment."[143]

The record and testimony regarding Zuech's suspension and removal support a finding that the Air Force's reasons were reasonable and thoroughly considered. [144] Zuech's security clearance and access to Hill AFB had been suspended following Zuech's conduct in recounting his dream about shooting his supervisor. The Air Force suspended him based on his loss of access to classified information and to Hill AFB. In response to the proposed suspension, Zuech

---

140 *See* Tarbett Testimony at USA01887:25–1889:20, 1890:20–1891:1 (Ex. D). And while Zuech insists he never intended to act on his dream, his decision to share this dream with coworkers certainly demonstrated a lack of judgment and professionalism.

141 *See supra* at p. 23–24.

142 *Ford v. Jackson Nat'l Life Ins. Co.*, 45 F.4th 1202, 1216 (10th Cir. 2022) (internal quotations omitted).

143 *Id.* (quoting *Bekkem v. Wilkie*, 915 F.3d 1258, 1267 (10th Cir. 2019)).

144 *See Conroy v. Vilsack*, 707 F.3d 1163, 1177 (10th Cir. 2013) (noting that a court "is not to act as a super personnel department that second guesses employers' business judgment" when an employer's proffered reasons for taking an employment action) (internal quotations omitted).

admitted to both having the dream and recounting that dream to two coworkers.[145] He also continued to demonstrate animus and frustration toward his supervisor and her denials of his leave requests.[146] Based on the seriousness of conduct, Zuech's prior disciplinary record, and the potential risks to the safety of other employees, the Air Force decided to remove him.[147] In short, "the evidence, taken as a whole, [is] insufficient to permit an inference" that the Air Force's reasons were a pretext to discriminate against Zuech solely because of his disability.[148]

## CONCLUSION

For the foregoing reasons, the Air Force requests that the Court grant summary judgment on Zuech's first and second causes of action.

Dated this 30th day of September, 2025.

FELICE JOHN VITI
Acting United States Attorney

*/s/ Amanda A. Berndt*
AMANDA A. BERNDT
Assistant United States Attorney

[145] *See* Zuech Resp. to Indefinite Suspension at USA00236 (Ex. X).

[146] *Id.* at USA00236–39.

[147] Tarbett Testimony at USA01887:25–1888:9 (Ex. D).

[148] *Bekkem*, 915 F.3d at 1271.