IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| T.J. ZUECH,<br><br>        Plaintiff,<br><br>  v.<br><br><br>TROY E. MEINK, Secretary,<br>Department of the Air Force,<br><br>        Defendant. | MEMORANDUM DECISION & ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ON DISABILITY DISCRIMINATION CLAIMS<br><br>Civil No. 1:24-cv-00038-AMA-DAO<br><br>District Judge Ann Marie McIff Allen<br><br>Magistrate Judge Daphne A. Oberg |

This matter comes before the Court on the Motion for Summary Judgment on Disability Discrimination Claims filed by Defendant Troy E. Meink, Secretary of the Department of the Air Force (referred to herein as "the Air Force").[1] The Court did not hear oral argument. Based on the parties' briefing and the applicable law, the Court will grant Defendant's Motion.

**UNDISPUTED FACTS**

Plaintiff T.J. Zuech was employed during the times relevant to this action as a GS-1670-11 Equipment Specialist (Missiles and Electronics) for the Nuclear Weapons Center at Hill Air Force Base ("Hill AFB"), a position that he had held since approximately 2018.[2] This position required that Mr. Zuech be allowed access to classified information,[3] and while some of his job

---

[1] ECF No. 42.
[2] *Id*. Ex. A at USA01947:20–24, USA01948:12–14; *id*. Ex. B.
[3] *Id*. Ex. C at USA00230; *id*. Ex. D at USA01878:22–1879:23.

1

duties could be handled remotely, other job duties were required to be performed at Hill AFB.[4]

Mr. Zuech's first-line supervisor during the relevant time period was Lori Masero.[5]

*Mr. Zuech's Leave from Work*

In 2022, Mr. Zuech submitted paperwork to take Paid Parental Leave ("PPL") beginning in late June or early July.[6] While on PPL, Mr. Zuech made requests to convert PPL leave to sick leave for various illnesses and doctor's appointments or to annual leave.[7] Some of these requests were approved while others were denied.[8] Between October and December 2022, Mr. Zuech continued to take various forms of paid leave[9]—for example, Mr. Zuech took annual leave for a hunting trip from October 3rd to the 17th.[10] And Mr. Zuech continued to request leave in January of 2023.[11] Between January 1st and January 18th, he was allowed to take his remaining PPL, and he otherwise covered the balance of his absence with sick leave.[12] However, when Mr. Zuech requested leave from January 19th to January 31st to work on his mental health and for doctor's appointments, his requests were denied.[13] He did not, however, return to work.[14] Indeed, Mr. Zuech never returned to performing his regular job duties after June 29, 2022.[15]

On January 9, 2023, Ms. Masero emailed Mr. Zuech a Reasonable Accommodation

---

[4] *Id*. Ex. E at USA01817:17–1818:3.
[5] *Id*.
[6] *Id*. at USA01825:13–1827:17.
[7] *Id*. at USA01834:15–22, USA01842:19–1843:3; *id*. Ex. F.
[8] *See generally id*. Ex. F.
[9] *Id*. at USA00372–76. During this timeframe, Mr. Zuech was paid for three hours of regular time, but that time was spent on union matters, not his regular job duties. *See id*. Ex. A at USA02003:16–20.
[10] *Id*. Ex. A at USA01965:2–7; *id*. Ex. F at USA00372–73.
[11] *Id*. Ex. F at USA00376–77.
[12] *Id*.
[13] *Id*. Ex. G. In these emails, Mr. Zuech requests on several days nine hours of leave for doctor's appointments.
[14] *Id*. Ex. F at USA00377–78.
[15] *Id*. Ex. A at USA02003:16–20.

Request Form to "assist [him] in processing any such request."[16] Mr. Zuech, through counsel, emailed this form to Greg Boykin, Hill AFB's Disability Program Manager on January 12, 2023.[17] Mr. Boykin requested additional medical documentation to process the accommodation request.[18] This documentation was to be provided no later than February 21, 2023.[19] On February 20, 2023, Mr. Zuech requested an extension of his deadline to provide medical documentation substantiating his mental-health disability and need for accommodation.[20] That same day, he resubmitted his accommodation form and stated he would provide the necessary medical documentation by the end of the week.[21] Ms. Masero denied the extension request and, in turn, the pending reasonable accommodation request on February 21st.[22] In doing so, she invited Mr. Zuech to submit a new request once he had the necessary documentation.[23]

On February 22, 2023, Mr. Zuech emailed a doctor's note to Ms. Masero, in which his doctor stated that Mr. Zuech "has been advised not to work over the past several months, and this is still the recommendation[.]"[24] Mr. Zuech had indeed remained off work during this time.[25] On March 9, 2023, Mr. Zuech submitted updated reasonable accommodation paperwork for consideration.[26] This paperwork included a note from Mr. Zuech's doctor that stated, "[P]atient's condition is severe anxiety, panic attacks, insomnia with psychosomatic complaints that are

---

[16] *Id*. Ex. H.
[17] *Id*. Ex. I.
[18] *Id*. Ex. J.
[19] *Id*. Ex. K at USA02306–07.
[20] *Id*. Ex. L.
[21] *Id*. Ex. A at USA01976:11–1977:10; *id*. Ex. M at USA02342–45.
[22] *Id*. Ex. A at USA01976:11–1977:10; *id*. Ex. E at USA01858:8–1859:18; *id*. Ex. M at USA02323–41.
[23] *Id*.
[24] *Id*. Ex. M at USA02346–47.
[25] *Id*. Ex. F at USA00378–79.
[26] ECF No. 50, Ex. 1.

severe . . . Patient is currently temporarily totally disabled from work due to these conditions . . . Anticipated duration of the disability is unknown at this time."[27] From March 9th to his indefinite suspension on May 3rd, Mr. Zuech's daily requests for paid leave were approved.[28]

*Mr. Zuech's Dream and Removal from Service*

While unable to return to his job duties in February of 2023, Mr. Zuech visited Hill AFB's union office to file grievances against his supervisors.[29] During this visit, Mr. Zuech recounted that he'd had a vivid dream the night before in which he ended up shooting his supervisor, Ms. Masero.[30] On March 3, 2023, a fellow employee who was present at the Union office and had heard Mr. Zuech recount this dream reported the incident to management.[31] Consequently, on March 15, 2023, the Vice Commander of the Air Force Nuclear Weapons Center suspended Mr. Zuech's access to classified information based upon the safety concerns arising from Mr. Zuech's dream about shooting his supervisor.[32] The next day, Hill AFB's Installation Commander barred Mr. Zuech from accessing the Base for the same reason.[33] Mr. Zuech received notice of these decisions on March 19, 2023.[34]

On April 18, 2023, Management issued Plaintiff a notice of proposed removal, which Mr. Zuech challenged through counsel.[35] The removal notice stated that Mr. Zuech's termination was based on safety concerns arising from his dream; his inability to perform his duties as a result of the order barring him from Base; and his lack of candor regarding certain of his requests for

---

[27] *Id.*
[28] ECF No. 26 at ¶¶ 141–173.
[29] ECF No. 42, Ex. A at USA01943:24–1945:23, 1992:9–1993:19.
[30] *Id.* at USA01945:13–18; *id.* Ex. S at USA01798:19–1799:20.
[31] *Id.* Ex. S at USA01802:11–1804:24; *id.* Ex. T.
[32] *Id.* Ex. U.
[33] *Id.* Ex. V.
[34] *Id.* Ex. X at 5.
[35] *Id.* Ex. AA.

leave.[36] The Chief of the MMIII Sustainment Division then removed Mr. Zuech from federal employment effective May 31, 2023.[37]

*Equal Employment Opportunity ("EEO") Office Contacts and Complaint*

On October 20, 2022, Mr. Zuech contacted Hill AFB's EEO office to inquire about filing an EEO complaint for discrimination related to his use of paternity time.[38] After being informed that his alleged basis of discrimination was not within the purview of the EEO laws, he elected not to pursue a complaint.[39] On November 7, 2022, Mr. Zuech again contacted Hill AFB's EEO office, and Mr. Zuech again elected not to pursue a complaint at that time.[40] On November 21, 2022, Mr. Zuech paid another visit to Hill AFB's EEO Office.[41] He was offered an intake packet, but he did not complete or return the intake packet.[42]

On July 15, 2023, 45 days after Mr. Zuech's termination date, he contacted an EEO counselor alleging disability discrimination.[43] Mr. Zuech completed and returned a Pre-Complaint Intake Packet in which he stated that he had "dissuaded" from filing an EEO complaint.[44] He thereafter filed a formal complaint of discrimination with the Air Force.[45] Upon the Air Force's dismissal of the formal complaint, Mr. Zuech timely appealed the decision to the Equal Employment Opportunity Commission's ("EEOC") Office of Federal Operations, which affirmed the agency's dismissal.[46]

---

[36] *Id.*
[37] *Id.* Ex. CC.
[38] *Id.* Ex. EE ¶ 4.
[39] *Id.* Ex. EE-1.
[40] *Id.* Ex. FF ¶ 4.
[41] *Id.* Ex. EE ¶¶ 6–8.
[42] *Id.*
[43] *Id.* Ex. EE ¶ 9.
[44] *Id.* Ex. GG.
[45] *Id.* Ex. HH.
[46] *Id.* Ex. JJ.

*Procedural History*

Mr. Zuech initiated the instant action on March 6, 2024.[47] Mr. Zuech's Amended

Complaint raises three causes of action: (1) failure to accommodate in violation of the

Rehabilitation Act; (2) disability discrimination in violation of the Rehabilitation Act; and (3)

judicial review of the Merit System Protection Board ("MSPB") Administrative Law Judge's

("ALJ") decision.[48] On September 30, 2025, the Air Force filed its Motion for Summary

Judgment on Disability Discrimination Claims.[49] Mr. Zuech filed his Opposition on January 5,

2026,[50] to which the Air Force replied on February 6, 2026.[51]

## STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute

as to any material fact and the movant is entitled to judgment as a matter of law."[52] "A fact is

'material' if, under the governing law, it could influence the outcome of the lawsuit."[53] "A

dispute over a material fact is 'genuine' if a rational jury could find in favor of the nonmovant on

the evidence presented."[54]

"In a response to a motion for summary judgment, a party cannot rest on ignorance of

facts, on speculation, or on suspicion and may not escape summary judgment in the mere hope

---

[47] ECF No. 1.
[48] ECF No. 26.
[49] ECF No. 42.
[50] ECF No. 50.
[51] ECF No. 53.
[52] Fed. R. Civ. P. 56(a).
[53] *Mauldin v. Driscoll*, 136 F.4th 984, 993 (10th Cir. 2025) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).
[54] *Id.*

that something will turn up at trial."[55] "The mere possibility that a factual dispute may exist, without more, is not sufficient to overcome convincing presentation by the moving party."[56] Rather, "[t]he litigant must bring to the district court's attention some affirmative indication that his version of relevant events is not fanciful."[57] In doing so, the nonmovant must set forth evidence of specific facts illustrating the existence of a genuine issue for trial.[58] The Court is required to construe all facts and reasonable inferences in the light most favorable to the nonmoving party.[59]

## **DISCUSSION**

The Air Force argues that summary judgment is appropriate on Mr. Zuech's Rehabilitation Act claims. The Court notes that the Air Force has not moved for summary judgment on Mr. Zuech's third cause of action for judicial review of the MSPB ALJ's decision, and thus the Court will not address that cause of action in this Order. As for Mr. Zuech's Rehabilitation Act claims, the Court agrees with the Air Force that summary judgment is appropriate in its favor. In short, Mr. Zuech failed to exhaust his administrative remedies, and he cannot establish that he was otherwise qualified for his position.

## A.      **Exhaustion of Administrative Remedies**

"Federal employees alleging discrimination or retaliation prohibited by . . . the Rehabilitation Act must comply with specific administrative complaint procedures in order to exhaust their administrative remedies."[60] Among other things, a federal employee "must . . .

---

[55] *Conaway v. Smith*, 853 F.2d 789, 794 (10th Cir. 1988).
[56] *Id.*
[57] *Id.*
[58] *Anderson*, 477 U.S. at 248.
[59] *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Wright v. Sw. Bell Tel. Co.*, 925 F.2d 1288, 1292 (10th Cir. 1991).
[60] *Hickey v. Brennan*, 969 F.3d 1113, 1118 (10th Cir. 2020).

'initiate contact' with an Equal Employment Opportunity counselor at his agency 'within 45 days of the date of the matter alleged to be discriminatory.'"[61] "If the matter is not resolved informally, the counselor provides a written notice to the federal employee of the right to file a formal EEO complaint for a decision by an ALJ."[62] "Thereafter, the federal employee may file a lawsuit in federal court within 90 days of receiving notice of final agency action on the formal complaint by the ALJ, or 180 days from the filing of the complaint if no final action was taken by that time."[63] "This regulatory exhaustion requirement is not a jurisdictional prerequisite for suit but is a claims-processing rule that the employer may raise as an affirmative defense."[64] As such, it is "subject to the same waiver and estoppel principles that govern other affirmative defenses."[65] "Because it is a mandatory rule, however, the [C]ourt must enforce this exhaustion requirement if the employer properly raises it."[66]

"Furthermore, 'each discrete incident of [discriminatory or retaliatory] treatment constitutes its own 'unlawful employment practice' for which administrative remedies must be exhausted.'"[67] "[D]iscrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges."[68] The Supreme Court has described "[d]iscrete acts such as termination, failure to promote, denial of transfer, or refusal to hire" as "easy to identify."[69] A denial of a request for an accommodation also "constitutes a discrete act

---

[61] *Green v. Brennan*, 578 U.S. 547, 549–50 (2016) (quoting 29 C.F.R. § 1614.105(a)(1)).
[62] *Russell v. Wormuth*, No. 22-4035-DDC, 2023 WL 4295420, at *3 (D. Kan. June 30, 2023) (citing 29 C.F.R. § 1614.105(d)).
[63] *Id*. (citing 29 C.F.R. § 1614.407(a)–(b)).
[64] *Hickey*, 969 F.3d at 1118.
[65] *Id*.
[66] *Id*.
[67] *Lincoln v. BNSF Ry. Co.*, 900 F.3d 1166, 1181 (10th Cir. 2018) (alterations in original) (quoting *Martinez v. Potter*, 347 F.3d 1208, 1210 (10th Cir. 2003)).
[68] *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002).
[69] *Id*. at 114.

of alleged discrimination[.]"[70]

The Air Force argues that any claim based on disciplinary actions or denials of reasonable accommodation that occurred prior to May 31, 2023—45 days prior to July 15, 2023—is untimely. The Court agrees.

In 2022, Mr. Zuech contacted Hill AFB's EEO office on October 20th, November 7th, and November 21st.[71] During these contacts, Mr. Zuech expressed concern about discrimination related to his use of leave and potential retaliation for filing union grievances.[72] Each time, however, Mr. Zuech elected not to pursue a complaint,[73] and when the EEO Specialist offered Mr. Zuech an intake packet on November 21st, Mr. Zuech did not complete or return the packet.[74] Accordingly, Mr. Zuech did not exhaust his administrative remedies for any discrete acts that may potentially have occurred during the 45 days preceding these contacts.

It was not until July 15, 2023—exactly 45 days after Mr. Zuech's employment was terminated—that Mr. Zuech again initiated contact with the EEO Office.[75] Unlike his previous encounters, this time, he completed a Pre-Complaint Intake Packet and thereafter filed a formal complaint of discrimination with the Air Force.[76] Thus, Mr. Zuech has only timely exhausted discrete acts that occurred 45 days prior to July 15, 2023, and the only discrete act that falls within that period is Mr. Zuech's termination, which occurred on May 31, 2023.

In other words, any claim related to a discrete act that occurred prior to May 31, 2023, is barred for Mr. Zuech's failure to timely exhaust his administrative remedies. This includes Mr.

---

[70] *Proctor v. United Parcel Serv.*, 502 F.3d 1200, 1210 (10th Cir. 2007).
[71] ECF No. 42, Ex. EE ¶¶ 4–6; *id*. Ex. FF ¶ 4.
[72] *Id*.
[73] *Id*.
[74] *Id*. Ex. EE ¶ 8.
[75] *Id*. ¶ 9.
[76] *Id*. Exs. GG, HH.

Zuech's claim for failure to accommodate. Plaintiff submitted three requests for accommodation on the following dates: January 12, 2023; February 21, 2023; and March 9, 2023.[77] The January 12th request was denied on February 21, 2023.[78] The February and March requests were effectively denied on March 19, 2023, when Mr. Zuech received notice of his barment from classified information and from being on Base.[79] Again, a denial of a request for an accommodation "constitutes a discrete act of alleged discrimination[,]"[80] and thus Mr. Zuech was required to initiate contact with the EEO office within 45 days of February 21st and March 19th. He failed to do so. As such, Mr. Zuech's claim for failure to accommodate is time-barred.

Mr. Zuech attempts to get around these timeliness issues by relying on a continuing violation theory of discrimination. "The law in the Tenth Circuit previously stated that 'in certain circumstances the claims of discrimination alleging incidents which occurred outside the time limitations may survive if the various acts constitute a continuing pattern of discrimination.'"[81] However, the Supreme Court abrogated this rule in *Morgan*.[82] "In *Morgan,* the Supreme Court held that a continuing violation theory of discrimination is not permitted for claims against discrete acts . . . Thus, a claimant must file a charge of discrimination within the appropriate limitations period as to each such discrete act of discrimination that occurred."[83] While *Morgan*

---

[77] *Id*. Ex. A at USA01976:11–1977:10; *id*. Ex. I; *id*. Ex. M at USA02342–45; ECF No. 50, Ex. 1.
[78] ECF No. 42, Ex. A at USA01976:11–1977:10; *id*. Ex. E at USA01858:8–1859:18; *id*. Ex. M at USA02323–41.
[79] *Id*. Ex. X at 5.
[80] *Proctor*, 502 F.3d at 1210.
[81] *Norman v. Syracuse High Sch.*, No. 1:12-cv-00021-EJF, 2013 WL 1335891, at *3 (D. Utah Mar. 29, 2013) (quoting *Croy v. Cobe Labs., Inc.*, 345 F.3d 1199, 1202 (10th Cir. 2003)).
[82] *See, e.g., Martinez v. Potter*, 347 F.3d 1208, 1210 (10th Cir. 2003) (recognizing that *Morgan* rejects application of the continuing violation doctrine to claims of discrete discriminatory or retaliatory treatment).
[83] *Davidson v. Am. Online Inc.*, 337 F.3d 1179, 1184 (10th Cir. 2003).

addressed claims brought under Title VII,[84] "[t]he rule set forth in *Morgan* applies equally to [Americans with Disabilities Act ("ADA")] claims[,]"[85] and other than that the ADA and the Rehabilitation Act have different causation standards, courts within the Tenth Circuit "typically evaluate claims identically under" these Acts.[86]

While the Supreme Court in *Morgan* did uphold the continuing violation doctrine as applied to hostile work environment claims,[87] it does not appear to this Court that such a claim is at issue or properly before the Court. The Air Force argues that Mr. Zuech has not asserted a hostile work environment claim in his Amended Complaint nor has he properly exhausted such a claim. In response, Mr. Zuech fails to address these arguments in any meaningful way—his only reference to "hostile work environment" is to say that Mr. Zuech *could have* included a claim for the creation of a hostile work environment on the basis of disability in any EEO complaint Mr. Zuech *could have* filed on or about October 20, 2022, or November 21, 2022.[88] By this, it seems to the Court that Mr. Zuech concedes that he has not asserted nor properly exhausted a hostile work environment claim. Indeed, while the Amended Complaint contains cursory references to "hostile work environment," it does not appear that either Mr. Zuech's first or second cause of action raise a hostile work environment claim.[89] They are, instead, premised on the failure to accommodate and on disparate or adverse employment actions.[90] Mr. Zuech is represented by

---

[84] *See Morgan*, 536 U.S. at 104.

[85] *Norman*, 2013 WL 1335891, at *3 n.5 (citing *Davidson*, 337 F.3d at 1184 ("We can find no basis upon which to restrict the Court's holding to Title VII, and we therefore conclude that the Court's reasoning in *Morgan* must be applied to cases brought under the ADA.")).

[86] *Crane v. Utah Dep't of Corr.*, 15 F.4th 1296, 1312–13 (10th Cir. 2021).

[87] *See Morgan*, 536 U.S. at 115–121.

[88] *See* ECF No. 50 at 27–28.

[89] ECF No. 26 ¶¶ 182–213.

[90] *Id.*

counsel and is not entitled to a liberal construction of his filings.[91] Accordingly, the Court agrees with the Air Force that Mr. Zuech did not bring a claim for hostile work environment.

Overall, because Mr. Zuech's claims are premised on discrete acts of discrimination, the continuing violation doctrine does not apply. As such, the continuing violation doctrine cannot save Mr. Zuech's failure to accommodate claim where he failed to timely exhaust his administrative remedies in relation to the denial of his requests for accommodation.

It also seems that, while far from clearly stated, Mr. Zuech argues that the Air Force should be estopped from raising his untimeliness as an affirmative defense because the Air Force dissuaded him from filing an EEO Complaint. Mr. Zuech has not, however, directed the Court to any evidence in the record to support this or to create a genuine dispute of material fact as to this issue. Again, when Mr. Zuech made contact with the EEO office in 2022, Mr. Zuech expressed concern about discrimination related to his use of leave and potential retaliation for filing union grievances.[92] Each time, Mr. Zuech himself elected not to pursue a complaint,[93] and when the EEO Specialist offered Mr. Zuech an intake packet on November 21st, Mr. Zuech did not complete or return the packet.[94] Based upon this evidence, no reasonable jury could find that the Air Force dissuaded him from filing an EEO Complaint. "Equitable doctrines such as tolling or estoppel . . . are to be applied sparingly, because the procedural requirements established by Congress for gaining access to the federal courts are not to be disregarded by courts out of a vague sympathy for particular litigants[.]"[95] Moreover, "[e]quitable tolling applies when an

---

[91] *See Mann v. Boatright*, 477 F.3d 1140, 1148 n.4 ("While we generally construe pro se pleadings liberally, . . . the same courtesy need not be extended to licensed attorneys.").
[92] ECF No. 42, Ex. EE ¶¶ 4–6; *id*. Ex. FF ¶ 4.
[93] *Id*.
[94] *Id*. Ex. EE ¶ 8.
[95] *Hickey*, 969 F.3d at 1118–19 (citation modified).

employee is 'lulled into inaction by h[is] past employer' or 'actively misled,' not when the employee simply 'failed to exercise due diligence in preserving h[is] legal rights.'"[96] Here, the record indicates that Mr. Zuech failed to exercise due diligence in preserving his legal rights. Such failure does not justify the application of an equitable doctrine.

In sum, as the Air Force has properly raised this exhaustion requirement, the Court must enforce it. Mr. Zuech has only timely exhausted discrete acts that occurred 45 days prior to July 15, 2023. The only discrete act that falls within that period is Mr. Zuech's termination, which occurred on May 31, 2023. His claim for failure to accommodate is thus time-barred, and summary judgment in the Air Force's favor on the failure to accommodate claim is warranted.

## B.    Otherwise Qualified

As discussed above, Mr. Zuech's only timely claim is that of disability discrimination with respect to his termination on May 31, 2023. To establish a prima facie case of discrimination under the Rehabilitation Act,[97] a plaintiff must show that "(1) [the employee] is a [disabled] person within the meaning of the Act; (2) []he is otherwise qualified for the job; and (3) []he was discriminated against because of the [disability]."[98] Generally, courts "look to the ADA for guidance in resolving Rehabilitation Act claims."[99] However, while the "ADA merely

---

[96] *Bond v. Wormuth*, No. 22-5019, 2022 WL 17660542, at *5 (10th Cir. Dec. 14, 2022) (quoting *Moneoya v. Chao*, 296 F.3d 952, 957–58 (10th Cir. 2002)).

[97] "[T]he *McDonnell Douglas* burden-shifting applies to Rehabilitation Act claims." *Cummings v. Norton*, 393 F.3d 1186, 1189 n.1 (10th Cir. 2005). Under this framework, which was articulated by the Supreme Court in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792 (1973), a plaintiff lacking direct evidence of discrimination "must first make a prima facie case of discrimination, after which the burden shifts to the defendant to articulate a nondiscriminatory reason for its conduct." *Id*. at 1189. "The plaintiff must then show that the defendant's stated reason is merely pretextual." *Id*. Here, the parties do not appear to dispute that the *McDonnell Douglas* framework would apply to this claim.

[98] *Woodman v. Runyon*, 132 F.3d 1330, 1338 (10th Cir. 1997).

[99] *Jarvis v. Potter*, 500 F.3d 1113, 1121 (10th Cir. 2007).

requires the plaintiff's disability be a but-for cause (i.e., 'by reason of') of the discrimination," the Rehabilitation Act requires the plaintiff's disability be "its sole cause (i.e., 'solely by reason of')."[100]

The Air Force contends that Mr. Zuech cannot establish a prima facie case of discrimination because he cannot show that he was "otherwise qualified for the job." A plaintiff is "otherwise qualified" for a position if "a reasonable accommodation would enable the person to perform the job."[101] "The determination as to whether an individual is a 'qualified individual with a disability' must be made as of the time of the employment decision[,]"[102] and "[t]here are two components to the . . . analysis. *First*, whether a reasonable accommodation would enable the employee to do the particular job. . . . *Second*, whether the employee could be transferred to other work which could be done with or without accommodation."[103] "The term 'reasonable accommodation' refers to those accommodations which presently, or *in the near future*, enable the employee to perform the essential functions of his job."[104]

The Air Force offers several reasons why Mr. Zuech was not otherwise qualified, such as that he lost access to classified information and was barred from entering Base, and there may well be several reasons why Mr. Zuech was not otherwise qualified. The Court, however, finds one of these reasons to be paramount: even had Mr. Zuech never lost access to classified information or been barred from Base—indeed, even had Mr. Zuech never recounted his dream of shooting his supervisor—Mr. Zuech cannot show that he was otherwise qualified because he

---

[100] *Crane*, 15 F.4th at 1313.

[101] *Gonzagowski v. Widnall*, 115 F.3d 744, 747 (10th Cir. 1997).

[102] *Cisneros v. Wilson*, 226 F.3d 1113, 1129 (10th Cir. 2000), *overruled on other grounds, Bd. of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356 (2001).

[103] *Gonzagowski*, 115 F.3d at 747 (emphasis in original).

[104] *Cisneros*, 226 F.3d at 1129 (emphasis in original).

was indefinitely unable to work in any capacity.

It is undisputed that Mr. Zuech did not return to performing his regular job duties after June 29, 2022.[105] Mr. Zuech's position was not terminated until May 31, 2023.[106] Thus, while Mr. Zuech spent some of this time on various types of authorized leave, he did not perform his job for nearly eleven months. The doctor's note Mr. Zuech submitted on February 22, 2023, states that Mr. Zuech "has been advised not to work over the past several months, and this is still the recommendation[.]"[107] The note from Mr. Zuech's doctor dated March 9, 2023, states that "[P]atient's condition is severe anxiety, panic attacks, insomnia with psychosomatic complaints that are severe . . . Patient is currently temporarily totally disabled from work due to these conditions . . . Anticipated duration of the disability is unknown at this time."[108] Significantly, both of these notes advise that Mr. Zuech cannot work in any capacity, and neither provides any indication of when, if ever, Mr. Zuech may be able to return to work. To be sure, in January of 2023, Mr. Zuech was regularly asking to take nine-hour leave days for doctor's appointments,[109] and Mr. Zuech has not offered any evidence that he was ever cleared by his medical provider to return to work.

"Attendance is generally an 'essential' function of any job[,]"[110] and "[a]n employer is not required to wait indefinitely for an employee to recover before terminating employment after

---

[105] ECF No. 42, Ex. A at USA02003:16–20.

[106] *Id*. Ex. CC.

[107] *Id*. Ex. M at USA02346–47.

[108] ECF No. 50, Ex. 1.

[109] ECF No. 42, Ex. G.

[110] *Cisneros*, 226 F.3d at 1129 (10th Cir. 2000) (citing *Nowak v. St. Rita High Sch.*, 142 F.3d 999, 1003 (7th Cir. 1998) ("Obviously, an employee who does not come to work cannot perform the essential functions of his job."); *Rogers v. Int'l Marine Terminals, Inc.*, 87 F.3d 755, 759 (5th Cir. 1996) ("[A]n essential element of any job is an ability to appear for work . . ."")); *see Hwang v. Kan. State Univ.*, 753 F.3d 1159, 1161 (10th Cir. 2014) ("It perhaps goes without saying that an employee who isn't capable of working for so long isn't an employee capable of performing a

an extended absence."[111] Mr. Zuech argues that the Air Force should have reasonably accommodated him by, for example, allowing him to transfer positions or to work from home. But as his doctor's note states, Mr. Zuech was *totally* disabled from work. Neither transferring him nor allowing him to work from home could have accommodated him where he was unable to work in any capacity. And as his doctor's note further states, the duration of his total disability was unknown. As such, a leave of absence could not have been a reasonable accommodation— "[t]here are two limits on the bounds of reasonableness for a leave of absence[:]" (1) "[t]he employee must provide the employer an estimated date when [he] can resume [his] essential duties" and (2) "[a] leave request must assure an employer that an employee can perform the essential functions of [his] position in the 'near future.'"[112]

Overall, "[t]he Rehabilitation Act seeks to prevent employers from callously denying reasonable accommodations that permit otherwise qualified disabled persons to work—not to turn employers into safety net providers for those who cannot work."[113] Here, the undisputed facts establish that, at the time of his termination, Mr. Zuech was unable to return to the workplace for the indefinite future with or without an accommodation. "Consequently, there is no reasonable accommodation that would enable him to perform any job at [Hill AFB]."[114] Mr. Zuech cannot thus establish that he was otherwise qualified for the job, and no reasonable jury could find otherwise. Because Mr. Zuech cannot establish a prima facie case of disability discrimination, summary judgment in the Air Force's favor is appropriate.

---

job's essential functions—and that requiring an employer to keep a job open for so long doesn't qualify as a reasonable accommodation.")).

[111] *Aspaas v. Becerra*, 689 F. Supp. 3d 989, 1025 (D.N.M. 2023), *aff'd*, No. 23-2157, 2024 WL 4360036 (10th Cir. Oct. 1, 2024).

[112] *Cline v. Clinical Perfusion Sys., Inc.*, 92 F.4th 926, 932 (10th Cir. 2024).

[113] *Hwang*, 753 F.3d at 1162.

[114] *Aspaas*, 689 F. Supp. 3d. at 1025.

## **ORDER**

Based on the foregoing, the Court GRANTS Defendant's Motion for Summary Judgment on Disability Discrimination Claims (ECF No. 42).

DATED this 30th day of July 2026.        BY THE COURT:

Ann Marie McIff Allen
United States District Judge